UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>            Plaintiff,<br><br>     v.<br><br>MAIN & PROSPECT CAPITAL, LLC, et al.<br><br>            Defendants. | Case No. 2:19-cv-09736-FLA (AFMx)<br><br>**CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST DEFENDANT DANIEL HEWKO [DKT. 151]** |

## I.     INTRODUCTION

On November 13, 2019, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against Defendants Daniel Hewko (hereinafter, "Defendant" or "Daniel Hewko"), Daniel Adam Hewko, and Main & Prospect Capital, LLC (collectively, "Defendants") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26 (2018), and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190 (2020). / / /

## II.   CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendant Daniel Hewko without a trial on the merits or any further judicial proceedings, Defendant Daniel Hewko:

1. Consents to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendant Daniel Hewko ("Consent Order");

2. Affirms he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat has been made by the Commission or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledges service of the summons and Complaint;

4. Admits the jurisdiction of this court over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018);

5. Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act;

6. Admits that venue properly lies with this court pursuant to 7 U.S.C. § 13a-1(e);

7. Waives:

    (a) Any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2018), relating to, or arising from, this action;

    (b) Any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–53, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C.

and 15 U.S.C.), relating to, or arising from, this action;

  (c) Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

  (d) Any and all rights of appeal from this action;

8. Consents to the continued jurisdiction of this court over him for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Defendant now or in the future resides outside the jurisdiction of this court;

9. Agrees that he will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

10. Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect his: (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the Commission is not a party.  Defendant shall comply with this agreement, and shall undertake all steps necessary to ensure that all of his agents and/or employees under his authority or control understand and comply with this agreement;

11. Consents to the entry of this Consent Order without admitting or denying the allegations of the Complaint or any findings or conclusions in this Consent Order, except as to jurisdiction and venue, which he admits;

12. Consents to the use of the findings and conclusions in this Consent Order in this proceeding and in any other proceeding brought by the Commission or

to which the Commission is a party or claimant, and agrees that they shall be taken as true and correct and be given preclusive effect therein, without further proof;

13. Does not consent, however, to the use of this Consent Order, or the findings and conclusions herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party, other than a: (a) statutory disqualification proceeding; (b) proceeding in bankruptcy, or receivership; or (c) proceeding to enforce the terms of this Order;

14. Agrees to provide immediate notice to this court and the Commission by certified mail, in the manner required by paragraph 71 of Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against him, whether inside or outside the United States; and

15. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendant in any other proceeding.

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction, and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), as set forth herein. The findings and conclusions in this Consent Order are not binding on any other party to this action.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.  Findings of Fact**

**The Parties to this Consent Order**

16. Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

17. Defendant Daniel Hewko's last known address is Fort Bragg, California.

1  Defendant has never been registered with the Commission in any capacity.

2  **The Solicitation and Acceptance of Investor Funds**

3  18.  In or around August 2014, Defendant began seeking investments in a pooled investment vehicle marketed to prospective investors as the Global Opportunity Fund (the "Fund").

19.  Most, if not all, of the individuals who have invested in the Fund from at least August 2014 to the present (the "Relevant Period") had been tax preparation clients of Defendant or individuals whom Defendant knew.  Defendant solicited funds for participation in the Fund.

20.  Defendant provided documents to investors referring to a "macro opportunity," "global macro opportunities," "global macro strategy," and the "Global Opportunity Fund."

21.  Investors were told by Defendant that Fund assets were invested or could be invested in commodities.

22.  From in or around September 2014 to in or around November 2014, Defendant transferred more than $1.1 million of investor funds into a futures trading account with a registered futures commission merchant, referred to herein as "FCM-1."

23.  On or around December 1, 2014, the funds in the futures trading account with FCM-1 were transferred to a second registered futures commission merchant, referred to herein as "FCM-2."  Investor funds held with FCM-2 remained in that trading account until in or around the summer of 2016.

24.  Funds in the futures trading accounts with FCM-1 and FCM-2 have been used to conduct a limited amount of trading of futures contracts including crude oil and E-mini S&P 500 futures contracts, both of which were traded on designated contract markets.

/ / /
/ / /

### Distribution of Account Statements to Investors

25. Prior to January 2016, Fund investors were not routinely provided account statements.

26. In a January 2016 letter to investors that Defendant provided to investors, investors were told "[the Fund Manager] know[s] many of you have felt like you have been in the dark and . . . [m]oving forward, we will issue quarterly statements."

27. From in or around January 2016 through in or around October 2018, Defendant emailed investors account statements for the Fund.

28. All of the purported investment returns contained in the quarterly statements provided to investors for fourth quarter 2015 through third quarter 2018 were false.

29. What little futures trading the Fund did in September and October 2014 and January 2015 resulted in losses. Moreover, Fund proceeds were never invested in any other manner during the Relevant Period that generated any returns at all for Fund investors, much less the substantial returns claimed in the quarterly statements.

30. In or around January 2016, Defendant emailed investors statements containing purported performance information for the last quarter of 2015, for the calendar year 2015, and since the Fund's inception (referred to herein as the "Q4 2015 Statements").

31. The Q4 2015 Statements reported investment gains for investors for calendar year 2015 well over 20% for those investors who had been invested in the Fund the longest, with purported returns "since inception" for many investors exceeding 20% and in at least one instance exceeding 30%. All of the claimed investment returns in the Q4 2015 Statements were false.

32. On or about January 5, 2016, and prior to Defendant's sending investors the Q4 2015 Statements, the Fund Manager emailed Defendant, stating that the account statement from FCM-2 showed a trading loss and "[f]or all intensive [sic]

purposes that P&L is our 2015 P&L . . . That number it represents our total loss on the year . . ." and "[s]o that leaves us with a loss. A total loss from trading . . . ."

33. Fund quarterly statements for 2016 (referred to herein as the "2016 Statements") claimed that the Fund had earned double digit investment returns in 2016.

34. However, the Fund had not enjoyed investment gains in 2016.

35. The 2016 Statement balances that were also inflated by the false returns previously reported in the Q4 2015 Statements.

36. Quarterly statements for 2017 (referred to herein as the "2017 Statements") claimed that the Fund had earned a total investment return of 12.53% for investors in 2017. This was not true.

37. The 2017 Statement balances were also inflated by the false returns previously reported in the Q4 2015 Statements and 2016 Statements.

38. Quarterly statements in 2018 ("2018 Statements") similarly claimed that the Fund had enjoyed substantial investment gains.

39. However, the Fund had not actually enjoyed the investment gains claimed in the 2018 Statements.

40. The 2018 Statement balances were also inflated by the false returns previously reported in the Q4 2015 Statements, 2016 Statements, and 2017 Statements.

**Dissipation of Pool Funds**

41. During the Relevant Period, Defendant made payments of Fund assets to various entities and individuals. Those entities and individuals were not entitled to such payments.

**Communications with Investors Who Sought to Withdraw Their Funds**

42. From at least April 2017 through the present, Defendant told Fund investors that their withdrawal requests could not be satisfied because Fund assets were, in his words, "in a trade."

43. In reality, Fund assets were not actually "in a trade," but rather had been dissipated.

44. Defendant also made statements to investors about the performance of their investment that were not true, and told at least one investor that the investor's funds were not lost or gone, in response to investor requests to withdraw funds, which was also not true.

**Defendant Failed to Register with the CFTC**

45. Defendant, in his capacity as a partner, officer, employee, consultant, agent (or similar status performing similar functions), has solicited funds, securities, or property for participation in a commodity pool.

46. Defendant has never registered with the Commission as an Associated Person of a Commodity Pool Operator and never qualified for any registration exemption.

**B. Conclusions of Law**

**Jurisdiction and Venue**

47. This court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2012) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), provides that the Commission may bring actions for injunctive relief or to enforce compliance with the Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

48. Venue properly lies with this court pursuant to 7 U.S.C. § 13a-1(e), because Defendants conducted business in this District, and acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this

District.

**Fraud by Deceptive Device or Contrivance**

49. By the conduct described in paragraphs 1 through 48 above, Defendant violated Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2020), in that he has used or employed (or attempted to use or employ) a device, scheme, or artifice to defraud investors; made (or attempted to make) untrue or misleading statements of material fact or omitted to state a material fact necessary in order to make the statements made not untrue or misleading; and engaged (or attempted to engage) in transactions, practices, or courses of business that operated as a fraud or deceit on investors by, among other things, intentionally or recklessly delivering to Fund investors quarterly statements containing false statements concerning investment gains, when in fact the Fund had not earned gains; misappropriating Fund assets; telling investors, falsely, that the Fund would (or did) pursue certain investment strategies, when in fact the Fund simply dissipated Fund assets; and telling Fund investors, falsely, that the Fund had not been able to satisfy withdrawal requests because the Fund was "in a trade."

**Fraud and Deceit by an Associated Person of a Commodity Pool Operator**

50. By that same conduct, Defendant has violated Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A), (B) (2018), in that he has, while acting as an Associated Person of a Commodity Pool Operator, used the mails or any means or instrumentality of interstate commerce (including email) to employ a device, scheme, or artifice to defraud Fund participants and engaged in a transaction, practice, or course of business which operated as a fraud or deceit upon Fund participants

**Failure to Register with the Commission**

51. By the conduct described in paragraphs 1 through 50 above, Defendant violated Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2018), and Regulation 3.12, 17 C.F.R. § 3.12 (2020), by, acting as an Associated Person of a Commodity Pool Operator, by soliciting funds, securities, or property for a Commodity Pool without

being registered with the Commission as an Associated Person of a Commodity Pool Operator.

52. Unless restrained and enjoined by this court, there is a reasonable likelihood that Defendant will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## IV. PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

53. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), Defendant is permanently restrained, enjoined and prohibited from directly or indirectly:

    a. Using or employing (or attempting to use or employ) a device, scheme, or artifice to defraud any person; making (or attempting to make) untrue or misleading statements of material fact or omitting to state a material fact necessary in order to make the statements made not untrue or misleading; and engaging (or attempting to engage) in transactions, practices, or courses of business that operate as a fraud or deceit on any person, in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2020);

    b. Using the mails or any means or instrumentality of interstate commerce, as a commodity pool operator or commodity trading advisor or as an associated person of a commodity pool operator or commodity trading advisor, to employ a device, scheme, or artifice to defraud any client or participant or prospective client or participant, or to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant, in violation of Sections 4*o*(1)(A) and (B), 7 U.S.C. § 6*o*(1)(A), (B) (2020); and

    c.    Being associated with a Commodity Pool Operator as a partner, officer, employee, consultant, or agent (or any person occupying a similar status or performing similar functions), in any capacity involving the solicitation of funds, securities, or property for a participation in a commodity pool or the supervision of any person or persons so engaged, unless registered with the Commission as an Associated Person of a Commodity Pool Operator, in violation of Section 6k(2) of the Act, 7 U.S.C. § 6k(2) (2018) and Regulation 3.12, 17 C.F.R. § 3.12 (2020).

54.    Defendant is also permanently restrained, enjoined and prohibited from directly or indirectly:

    a.    Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2020); and/or

    b.    Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2020)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2018), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9).

55.    Defendant is also for a period of ten years enjoined and prohibited from directly or indirectly:

    a.    Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2018));

    b.    Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2020)), for his own personal account or for any account in which he has a direct or indirect

               interest;

    c.     Having any commodity interests traded on his behalf;

    d.     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests; and/or

    e.     Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests.

## V. RESTITUTION, DISGORGEMENT, AND CIVIL MONETARY PENALTY

**A. Restitution**

56. Defendant shall pay restitution in the amount of five hundred thousand dollars ($500,000) ("Restitution Obligation"). If the Restitution Obligation is not paid immediately, post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2018).

57. For any amounts paid by Codefendants Daniel Adam Hewko and/or Main & Prospect Capital, LLC to satisfy their restitution obligations in this case, Defendant shall receive a dollar-for-dollar credit against his Restitution Obligation.

58. To effect payment of the Restitution Obligation and the distribution of any restitution payments to Fund investors ("pool participants"), the court appoints the National Futures Association ("NFA") as Monitor ("Monitor"). The Monitor shall receive restitution payments from Defendant and make distributions as set forth below. Because the Monitor is acting as an officer of this court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

59. Defendant shall make Restitution Obligation payments, and any post-judgment interest payments, under this Consent Order to the Monitor in the name

"CFTC v. MPC, et al., 19cv9736, Restitution Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies the paying Defendant and the name and docket number of this proceeding.  Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

60. The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to pool participants identified by the Commission or may defer distribution until such time as the Monitor deems appropriate.  In the event that the amount of Restitution Obligation payments to the Monitor are of a de minimis nature such that the Monitor determines that the administrative cost of making a distribution to eligible pool participants is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in Part B below.

61. Defendant shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify pool participants to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments.  Defendant shall execute any documents necessary to release funds that he has in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

62. The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to pool participants

during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

63. The amounts payable to each pool participant shall not limit the ability of any pool participant from proving that a greater amount is owed from Defendant or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any pool participant that exist under state or common law.

64. Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each pool participant who suffered a loss is explicitly made an intended third-party beneficiary of this Consent Order and may seek to enforce obedience of this Consent Order to obtain satisfaction of any portion of the restitution that has not been paid by Defendant to ensure continued compliance with any provision of this Consent Order and to hold Defendant in contempt for any violations of any provision of this Consent Order.

65. To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendant's Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B.  Civil Monetary Penalty**

66. Defendant shall pay a civil monetary penalty in the amount of one hundred seven thousand five hundred dollars ($107,500) ("CMP Obligation"). If the CMP Obligation is not paid immediately, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2018).

67. Defendant shall pay his CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds

transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> 9-AMC-AR-CFTC@faa.gov

68. If payment by electronic funds transfer is chosen, Defendant shall contact Tonia King or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Defendant shall accompany payment of the CMP Obligation with a cover letter that identifies Defendant and the name and docket number of this proceeding. Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

**C.   Provisions Related to Monetary Sanctions**

69. Partial Satisfaction: Acceptance by the Commission or the Monitor of any partial payment of Defendant's Restitution Obligation or CMP Obligation shall not be deemed a waiver of his obligation to make further payments pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

**D.   Cooperation**

70. Defendant shall cooperate fully and expeditiously with the Commission, including the Commission's Division of Enforcement, in this action, and in any current or future Commission investigation or action related thereto. Defendant shall also cooperate in any investigation, civil litigation, or administrative matter related to,

or arising from, this action.

## VI. MISCELLANEOUS PROVISIONS

71. Notice: All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

>Manal M. Sultan, Deputy Director
>Division of Enforcement
>Commodity Futures Trading Commission
>290 Broadway, 6th Floor
>New York, NY 10007

Notice to Defendant:

>Vinoo P. Varghese, Esq.
>Varghese & Associates, P.C.
>2 Wall Street
>New York, NY 10005

All such notices to the Commission shall reference the name and docket number of this action.

72. Change of Address/Phone: Until such time as Defendant satisfies in full his Restitution Obligation and CMP Obligation as set forth in this Consent Order, Defendant shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten calendar days of the change.

73. Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this court.

74. Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent

Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

75. Waiver: The failure of any party to this Consent Order or of any pool participant at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or pool participant at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

76. Continuing Jurisdiction of this Court: This court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendant to modify or for relief from the terms of this Consent Order.

77. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendant, upon any person under his authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendant.

78. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

79. Contempt: Defendant understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings he

1 | may not challenge the validity of this Consent Order.

2 | 80. Agreements and Undertakings: Defendant shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief Against Defendant Daniel Hewko* forthwith and without further notice.

Dated: June 7, 2022

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge